UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DWIGHT PATTERSON, JR.                          CIVIL ACTION

versus                                         NO. 10-4587

N. BURL CAIN, WARDEN                           SECTION: "B" (3)

<u>REPORT AND RECOMMENDATION</u>

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. <u>See</u> 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Dwight Patterson, Jr., is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On July 25, 2004, he was convicted of first degree murder under Louisiana law.[1] On August 27, 2004, he was sentenced to a term of life imprisonment without

---

[1] State Rec., Vol. XV of XVIII, transcript of July 25, 2004, p. 23; State Rec., Vol. IV of XVIII, minute entry dated July 25, 2004; State Rec., Vol. VI of XVIII, jury verdict form.

benefit of probation, parole, or suspension of sentence.[2]  On March 8, 2006, the Louisiana Fourth

Circuit Court of Appeal affirmed that conviction and sentence.[3]  The Louisiana Supreme Court then

denied petitioner's related writ application on November 22, 2006.[4]

On January 10, 2008, petitioner filed with the state district court an application for

post-conviction relief.[5]  That application was denied on July 17, 2009.[6]  Post-conviction relief was

likewise denied by the Louisiana Fourth Circuit Court of Appeal on September 15, 2009,[7] and by

the Louisiana Supreme Court on October 15, 2010.[8]

On November 22, 2010, petitioner filed the instant federal *habeas corpus* application.

In support of that application, he asserts the following claims:

1.    Petitioner received ineffective assistance of counsel;

---

[2] State Rec., Vol. XV of XVIII, transcript of August 27, 2004; State Rec., Vol. IV of VIII, minute entry dated August 27, 2004.

[3] State v. Patterson, No. 2005-KA-0164 (La. App. 4th Cir. Mar. 8, 2006); State Rec., Vol. XV of XVIII.

[4] State v. Patterson, 942 So.2d 552 (La. 2006) (No. 2006-KO-1248); State Rec., Vol. XV of XVIII.

[5] State Rec., Vol. III of XVIII.

[6] State Rec., Vol. XVII of XVIII, minute entry dated July 17, 2009.

[7] State v. Patterson, No. 2009-K-1125 (La. App. 4th Cir. Sept. 15, 2009); State Rec., Vol. XVII of XVIII.

[8] State *ex rel.* Patterson v. State, 46 So.3d 1280 (La. 2010) (No. 2009-KH-2306); State Rec., Vol. XVIII of XVIII.

2.      Petitioner's identification should have been suppressed because it was resulted from procedures which were unduly suggestive;

3.      The trial was rendered unfair by the judge's prejudicial comments; and

4.      The prosecution failed to establish a proper chain of custody for petitioner's blood sample.

The state concedes that petitioner's application is timely.[9]

<u>Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application

---

[9] Rec. Doc. 17, pp. 1 and 5-8.

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

　　　　　As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

　　　　　Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

　　　　　Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

– 4 –

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so*

> *lacking in justification that there was an error well understood and*
> *comprehended in existing law beyond any possibility for fairminded*
> *disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

> Officer Christopher Russell of the New Orleans Police
> Department (NOPD) sustained a fatal gunshot wound while
> responding to an armed robbery call in the early morning hours of
> August 4, 2002.
> Shortly before Officer Russell and his trainee-partner, Officer
> Mary Colon, were dispatched on the armed-robbery call, Willie
> Wilbon entered the Tango Lounge[FN1], 1801 Spain Street, located
> at the corner North Roman Street, walked up to the bar, ordered a
> Heineken, spoke with some people, and then went to the restroom.
> Upon leaving the restroom, Wilbon picked up his beer and asked
> Peggy Pritchett[FN2], the bartender, to "buzz" him out of the
> electronically controlled door. Ms. Pritchett complied and as Wilbon
> exited the lounge he held the door open to allow three men armed
> with guns to enter. The first gunman (subsequently identified as the
> defendant) wore a white tee-shirt and shouted orders at the other
> gunmen, the bartender, and the sixteen lounge patrons. He demanded
> that Ms. Pritchett give him the money from the cash register[FN3]
> and threatened to kill her several times. The lounge patrons, after
> being forced to remove their clothes and lay on the floor, were robbed
> of their money, jewelry, and other valuables. One of the patrons,
> Oleatha Washington Perkins, was playing video poker in the back
> room when the gunmen entered the bar and managed to conceal
> herself behind a video poker machine while she dialed 911[FN4]
> alerting the police to the robbery in progress. The information that
> an armed robbery was in progress was dispatched to Officers Russell
> and Colon who were on patrol in a marked police vehicle. Officer
> Russell drove towards the lounge, turning onto Spain Street from
> North Claiborne Avenue and driving slowly past North Roman Street
> until he stopped in front of the club. Officer Colon, sitting in the
> passenger seat of the patrol car, looked[FN5] into the lounge and saw

– 6 –

three people, two standing by the bar and another to the right of the bar.

> [FN1]  The club is also referred to in the record as the "Club Tango Lounge" and "Club Tango."  Research has not revealed which name is correct.

> [FN2]  We note that Ms. Pritchett is sometimes referred to as "Pritchard" in the record but for consistency she is referred to as Pritchett throughout this opinion.

> [FN3]  Approximately $1000.00 was removed from the cash register.

> [FN4]  Ms. Perkins's first call, received at 3:17 a.m., was disconnected and she called back, stating that the men were asking for money and drugs.

> [FN5]  The lounge was located in a single story wood frame structure with a single glass door and black iron bars in the front of the building.

With the arrival of the police in front of the lounge, the gunmen attempted to leave the lounge.[FN6]  Two of the gunmen attempted to find an exit through the ceiling while the defendant ordered the bartender to "buzz" him out the front door.  As the defendant emerged from the front door, he stared directly at Officer Colon, walked a couple of steps toward the police vehicle and then raised his hand, revealing a gun.  Officer Colon yelled to Officer Russell that the defendant was armed and ducked down in her seat as the defendant began shooting at the patrol car.  Looking over towards the driver's side of the vehicle, Officer Colon saw the door open and Officer Russell lying on the ground motionless.  The two other gunmen (later identified as Michael Davis and Bradley Armstrong), unsuccessful in finding an alternative exit from the lounge, emerged through the front door, running down the sidewalk and behind a building.  The defendant quickly followed the other two gunmen and Officer Colon went to Officer Russell's assistance, calling for help.[FN7]  Upon the arrival of the emergency medical service, Officer Colon rode with her partner in the ambulance to Charity Hospital where he was pronounced dead shortly after arrival.[FN8]

Neither Officer Russell nor Officer Colon discharged their firearms during the incident.

> [FN6]  One of the gunmen, in an attempt to flee at the time of the shooting, initially jumped onto the bar and pushed on the ceiling with his gun.

> [FN7]   Officer Colon radioed for assistance at approximately 3:25 a.m.

> [FN8]  Officer Russell did not have a pulse upon arrival at Charity but was briefly resuscitated.  His official time of death was 4:47 a.m.

Meanwhile, other police officers arrived on the scene.  Davis was quickly apprehended[FN9] hiding in bushes around the corner from the lounge with a .380 automatic weapon, jewelry, and money taken in the robbery in his possession.  As the police investigation proceeded, the bartender (Ms. Pritchett) and lounge patrons were interviewed, as police officers searched the crime scene and vicinity for evidence.  More than four hours after the incident, Detectives McMullen and Jeff Jacobs were investigating the vehicles parked near the lounge and observed, through an open side-vent window of a black Chevrolet S-10 truck with tinted windows parked on the North Roman Street near the front door of the lounge,[FN10] a person sitting in the driver's seat of the vehicle.  As the detectives approached the truck to investigate its occupant, they saw that an additional person was seated in the front passenger seat.  Accordingly, the detectives opened the front door of the truck and ordered the two men to exit the vehicle.  Shortly thereafter, Ms. Pritchett walked out of the lounge accompanied by Sergeant Anderson and recognized the man (later identified as Willie Wilbon) sitting nearest to the door as "Billy" the person who held the door open for the three gunmen.  She spontaneously identified him to Sergeant Anderson who immediately alerted Detective McMullen. Sergeant Anderson escorted Ms. Pritchett back into the lounge and Detective McMullen advised the two men they were under investigation for armed robbery and of their constitutional rights. The black truck, registered to Bradley Armstrong, was impounded. Later that day at the police station, Ms. Pritchett and Officer Colon separately identified the defendant in photographic lineups as the shooter.

– 8 –

[FN9]    Davis, apprehended by a Special Operations/K9 unit at approximately 4:07 a.m., sustained several dog bite related injuries resisting arrest and was taken to Charity Hospital for treatment. Officer Colon, who arrived at Charity Hospital with Officer Russell, encountered Davis in the hallway and immediately recognized him as the suspect who exited the lounge behind the defendant.

[FN10]  In a statement given to police that afternoon at approximately 1:20 p.m., Wilbon explained that the plan was for him to gain entry to the lounge (based on prior patronage) and then, upon exiting, hold the door open for the three gunmen to enter.  After the robbery, Wilbon was to act as the getaway driver. Accordingly, Wilbon was sitting in the truck waiting for the gunmen when he saw the police arrive.  He heard gunshots and, approximately 5 minutes later, the defendant appeared.  The defendant got into the truck and, changing his white tee-shirt for a "Pizza Hut" collared shirt that was in the truck, told Wilbon that they were going to wait for the other two men. The two men never returned and the area was quickly surrounded by police, preventing an escape. Accordingly, Wilbon and the defendant remained in the truck for over five hours after the robbery until approached by the Detectives McMullen and Jacob.

A search warrant was obtained the next day and, pursuant to the warrant, Detectives John Ronquillo and Collin Arnold recovered jewelry and identification cards reported stolen by the lounge patrons, as well as a white tee-shirt and a Witness .40 caliber semi-automatic pistol,[FN11] later determined to be the murder weapon from the truck.  Subsequent scientific tests detected gunpowder residue on the white tee-shirt and DNA evidence connected it to the defendant.

[FN11]  The gun had been stolen from its registered owner.[10]

<u>Ineffective Assistance of Counsel</u>

Petitioner first asserts a multi-part claim alleging that he received ineffective assistance of counsel at trial.  Specifically, petitioner claims that his trial counsel was ineffective for failing to (1) impeach Pritchett with her prior statement, (2) hire or consult with a ballistics expert, and (3) interview and investigate witnesses.

The state argues that those claims are procedurally defaulted.  Claims can be procedurally defaulted in two different ways.

First, a federal *habeas* claim is procedurally defaulted if the "prisoner fail[ed] to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  <u>Nobles v. Johnson</u>, 127 F.3d 409, 420 (5th Cir. 1997) (internal quotation marks omitted). In the instant case, the state correctly notes that the claim regarding counsel's failure to hire or

---

[10] <u>State v. Patterson</u>, No. 2005-KA-0164, at pp. 1-4 (La. App. 4th Cir. Mar. 8, 2006); State Rec., Vol. XV of XVIII.

consult with a ballistics expert was defaulted in this sense because petitioner never asserted it in

state court[11] and because he would now be barred from doing so on procedural grounds.[12]

_____

[11] Petitioner disputes this, contending that the claim was asserted in his original post-conviction application.  After reviewing that application, this Court rejects that contention.  Nevertheless, even if that application were interpreted so broadly as to encompass the claim, it would not aid petitioner.  In that event, the claim would still be defaulted for the same reasons as petitioner's remaining ineffective assistance claims.  A full discussion as to why those remaining claims are defaulted is included later in this opinion.

[12] The state correctly notes that any new state post-conviction application asserting this claim would be untimely under La.C.Crim.P. art. 930.8.  In pertinent part, that article provides:

> A.  No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
>
> (1) The application alleges, and the petitioner proves or the state admits, that the facts upon which the claim is predicated were not known to the petitioner or his attorney.
>
> (2) The claim asserted in the petition is based upon a final ruling of an appellate court establishing a theretofore unknown interpretation of constitutional law and petitioner establishes that this interpretation is retroactively applicable to his case, and the petition is filed within one year of the finality of such ruling.
>
> (3) The application would already be barred by the provisions of this Article, but the application is filed on or before October 1, 2001, and the date on which the application was filed is within three years after the judgment of conviction and sentence has become final.
>
> (4) The person asserting the claim has been sentenced to death.

La.C.Cr.P. art. 930.8(A).
This Court additionally notes that any new application asserting the claim would also be barred under La.C.Cr.P. 930.4(E), which provides:  "A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."

Second, a federal *habeas* claim is procedurally defaulted if "the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision."  Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001).  As to this type of default, the United States Fifth Circuit Court of Appeals explained:  "To satisfy the 'independent' and 'adequate' requirements, the dismissal must 'clearly and expressly' indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims."  Id.

In the instant case, the last state court decision on petitioner's remaining ineffective assistance claims rejected the claims as untimely filed under La.C.Crim.P. art. 930.8.[13]  Article 930.8 has repeatedly been found to be an "independent" and "adequate" state procedural ground which, when relied upon by the state courts to reject a claim, bars federal *habeas* review of that claim.  Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); see also Morris v. Cain, No. 06-30916, 2008 WL 3876479 (5th Cir. Aug. 20, 2008); Pineyro v. Cain, 73 Fed. App'x 10, 11 (5th Cir. 2003); Tolbert v. Cain, Civ. Action No. 08-435, 2009 WL 1309851, at *2 (M.D. La. May 11, 2009); Lott v. Travis, Civ. Action No. 08-1390, 2008 WL 4964797, at *7-8 (E.D. La. Nov. 18, 2008); MacCracken v. Louisiana, Civ. Action No. 07-9540, 2008 WL 2951214, at *10 (E.D. La. July 25, 2008).

---

[13] The Louisiana Fourth Circuit Court of Appeal expressly held that petitioner's post-conviction application was untimely under article 930.8.  State v. Patterson, No. 2009-K-1125 (La. App. 4th Cir. Sept. 15, 2009); State Rec., Vol. XVII of XVIII.  The Louisiana Supreme Court then denied his related writ application without assigning reasons.  State *ex rel.* Patterson v. State, 46 So.3d 1280 (La. 2010) (No. 2009-KH-2306); State Rec., Vol. XVIII of XVIII.  "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground."  Finley, 243 F.3d at 218.

The state, however, takes the position that article 930.8 should not be considered an "adequate" bar here because it was erroneously applied.  Several courts have found that a state procedural ground does not bar federal review on a claim if it was erroneously applied under the facts of the particular case.  See, e.g., Palmer v. Cain, Civ. Action No. 06-0838, 2007 WL 2461655, at *5 (W.D. La. July 21, 2007) (Methvin, M.J.) (adopted by Melançon, J., on August 27, 2007); Johnson v. Lensing, Civ. Action No. 99-0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999); Poree v. Cain, Civ. Action No. 97-1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999); Carney v. Cain, Civ. Action No. 98-0712, 1999 WL 311943, at *3 (E.D. La. May 17, 1999).  Even if this Court assumes for the purposes of this decision that a state court's erroneous application of a state procedural rule renders the rule inadequate to bar federal review, the Court questions whether it has been established that article 930.8 was in fact erroneously applied in this case.[14]  However, in light of the state's concession on this point and its failure to offer any evidence to rebut the evidence submitted by petitioner concerning the purported timeliness of his state court filing, the Court will assume for the purposes of this decision that article 930.8 was not an "adequate" ground under the facts of this case.

That said, the Court's inquiry is not finished because the state also argues that the remaining ineffective assistance claims are nevertheless still procedurally barred for an entirely

---

[14] Article 930.8 is a provision of *state* law.  Normally, "'it is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'"  Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).  In instant case, petitioner expressly argued to the Louisiana Supreme Court that the Louisiana Fourth Circuit's decision invoking article 930.8 was erroneous and provided purported evidence in support of his contention.  After presumably reviewing that evidence and finding it unconvincing, the Louisiana Supreme Court rejected petitioner's writ application challenging the Court of Appeal's decision.

different reason.  After the Court of Appeal issued its decision invoking article 930.8, petitioner, as

noted, sought review of that decision by the Louisiana Supreme Court.  However, in his Louisiana

Supreme Court writ application, petitioner presented only a *single* issue for review:  "Whether this

Application For Post-Conviction relief was timely filed under LA. C.Cr.P. Art. 930.8(a)?"[15]  At no

point in his writ application did he *also* seek review of his underlying post-conviction claims or

argue their merits.  Because petitioner asked the Louisiana Supreme Court to review *only* the Court

of Appeal's application of article 930.8, the state argues that his underlying substantive ineffective

assistance claims were never fairly presented to the Louisiana Supreme Court for review and are,

therefore, unexhausted.  The state is correct for the following reasons.

Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must first exhaust his

remedies in state court before seeking *habeas corpus* relief from the federal courts.  "To exhaust,

a petitioner must have fairly presented the substance of his claim to the state courts."  Wilder v.

Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).  Generally, the

federal exhaustion requirement is satisfied only when the grounds urged in a federal petition were

previously presented to the state's *highest* court in a procedurally proper manner according to state

court rules.  Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988).

Moreover, in Baldwin v. Reese, 541 U.S. 27 (2004), the United States Supreme Court

explained that claims are unexhausted unless they are *expressly* raised by a petitioner in his state-

court petition, brief, or similar document.  In that case, the Supreme Court rejected inmate Reese's

argument that his claims were fairly presented to the Oregon Supreme Court because the justices

_____

[15] State Rec., Vol. XVIII of XVIII, writ application in case number 09-KH-2306, p. 4.

of that court had the "opportunity" to review the lower court records when deciding whether to grant

discretionary review.  The United States Supreme Court rejected that argument, holding:

> We recognize that the justices of the Oregon Supreme Court did have an "opportunity" to read the lower court opinions in Reese's case.  That opportunity means that the judges *could* have read them.  But to say that a petitioner "fairly presents" a federal claim when an appellate judge can discover that claim only by reading lower court opinions in the case is to say that those judges *must* read the lower court opinions – for otherwise they would forfeit the State's opportunity to decide that federal claim in the first instance.  In our view, federal habeas corpus law does not impose such a requirement.
>
> For one thing, the requirement would force state appellate judges to alter their ordinary review practices.  Appellate judges, of course, will often read lower court opinions, but they do not necessarily do so in every case.  Sometimes an appellate court can decide a legal question on the basis of the briefs alone.  That is particularly so where the question at issue is whether to exercise a discretionary power of review, i.e., whether to review the merits of a lower court decision.  In such instances, the nature of the issue may matter more than does the legal validity of the lower court decision.  And the nature of the issue alone may lead the court to decide not to hear the case.  ...
>
> For another thing, the opinion-reading requirement would impose a serious burden upon judges of state appellate courts, particularly those with discretionary review powers.  Those courts have heavy workloads, which would be significantly increased if their judges had to read through lower court opinions or briefs in every instance.

Baldwin, 541 U.S. at 31-32.  The Supreme Court therefore held that a claim is not "fairly presented"

to a court for exhaustion purposes "if that court must read beyond a petition or a brief (or a similar

document)."  Id. at 32.

Petitioner did not ask the Louisiana Supreme Court to review the substance of his

underlying ineffective assistance claims.  Further, he has pointed to no authority suggesting that the

justices of that court would have, unasked, reviewed those claims, and there is simply no reason to

believe they in fact did so.  Petitioner presented the justices with the narrow issue of whether the Court of Appeal erred in finding his post-conviction application untimely.  The justices had no need to consider the merits of his underlying substantive claims in order to determine whether the post-conviction application had been timely filed.

In light of the foregoing, petitioner's remaining ineffective assistance claims are unexhausted.  And, as with his other ineffective assistance claim, the state further correctly argues that the claims are therefore defaulted because any new attempt to bring the claims in state court would now be barred under the state's procedural rules.[16]

Accordingly, this Court finds that the state is correct in arguing that all of petitioner's ineffective assistance of counsel claims were defaulted in state court.  Nevertheless, further discussion is required because, in limited circumstances, a *habeas* petitioner may still be afforded federal review of defaulted claims.  Specifically, this Court may review petitioner's defaulted claims if he demonstrates either (1) the existence of "cause" *and* "prejudice" or (2) that a failure to address the claims will result in a "fundamental miscarriage of justice."  See, e.g., Bagwell v. Dretke, 372 F.3d 748, 756-57 (5th Cir. 2004).  Unfortunately, petitioner has demonstrated neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him."  Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original).  Objective factors that can

---

[16] For example, any new application asserting these claims would be barred as successive La.C.Cr.P. arts. 930.4(D), which provides:  "A successive application may be dismissed if it fails to raise a new or different claim."  Any new application would also be untimely under La.C.Cr.P. art. 930.8.  See *supra* note 12.

constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel.  Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir.1992).  Here, petitioner has not established cause for the failure to properly raise the defaulted claims. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, this Court must determine whether the application of the procedural bar would result in a fundamental miscarriage of justice.  In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted). Applying that standard, the Court finds that petitioner has not made a persuasive showing that he is actually innocent of the charge against him.  The evidence of petitioner's guilt, including his identification by multiple eyewitnesses, was overwhelming.  Therefore, he has not demonstrated that

any miscarriage of justice will result from the application of the procedural bars.  Accordingly, his

ineffective assistance claims are procedurally barred in this federal court.

Unduly Suggestive Identification

Petitioner's second claim is that identification should have been suppressed because

it resulted from procedures that were unduly suggestive.  With respect to such claims, the United

States Fifth Circuit Court of Appeals has noted:

> [T]he admissibility of identification evidence is governed by a two-
> step analysis.  Initially, a determination must be made as to whether
> the identification procedure was impermissibly suggestive.  Next, the
> court must determine whether, under the totality of the circumstances,
> the suggestiveness leads to a substantial likelihood of irreparable
> misidentification.

Herrera v. Collins, 904 F.2d 944, 946 (5th Cir. 1990) (footnote omitted).

A claim that identification testimony was unconstitutionally admitted at trial presents

a mixed question of law and fact.  Id. at 947 n.3.  Therefore, this Court must defer to the state court

unless the petitioner shows that the state court's decision "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States."  28 U.S.C. § 2254(d)(1).  For the following reasons, the Court finds that

petitioner has made no such showing in this case.

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's

claim, holding:

> The defendant contends that the bartender's identification in
> the photographic lineup was rendered impermissibly suggestive by
> her "show up" identification of the defendant on the morning after the
> shooting and that the trial court erred in denying his motion to
> suppress identification.

To suppress an identification, the defendant must first prove[FN14] that the identification procedure was suggestive. State v. Prudholm, 446 So.2d 729, 738 (La. 1984). An identification procedure is suggestive if, during the procedure, the witness' attention is unduly focused on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La. 1980). However, even where the suggestive nature of the identification process is proven by the defendant or presumed by the court, the defendant must also show that there was a substantial likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d at 739; Manson v. Braithwaite, 432 U.S.98 (1977). Under Manson, the factors which courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of misidentification include:  1) the witness' opportunity to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of his prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation. Manson, 432 U.S. at 115.

> [FN14]  The burden of proof is on the defendant.  La. Code Crim. Proc. art. 703(D).

The trial judge held an evidentiary hearing on motions, including the defendant's motion to suppress the identification, on March 28, 2003. Sergeant Anderson and Ms. Pritchett both testified at the hearing. According to Sergeant Anderson, Wilbon was sitting with the defendant on the ground next to the truck when Ms. Pritchett emerged from the lounge and spontaneously identified the nearer of the two men (Wilbon) as "Billy," the person who held the door open for the three gunmen.  Sergeant Anderson immediately took Ms. Pritchett back into the lounge and did not question her as to whether she saw the second man by the truck or whether she could identify him.  Concomitantly, Ms. Pritchett testified[FN15] that when she emerged from the lounge she saw two men sitting on the ground by a truck and recognized the man sitting nearest to her as "Billy" but that she could not see the face of the second man.  Later that day at the police station, she identified the defendant as the shooter in a photographic lineup.[FN16]

> [FN15]  At trial Ms. Pritchett reiterated that, although there was a person sitting next to "Billy," his head

was down and she could only see the legs and top part of his body, she was not asked to identify the person, and did not discuss the person with officers on the scene.

[FN16]  The record indicates that at the police station that afternoon, Wilbon identified the defendant in a photographic line-up at 12:45 p.m., Ms. Pritchett identified the defendant in a photographic line-up shortly thereafter a [sic] 1:10 p.m., and Officer Colon identified the defendant in a photographic line-up at 2:11 p.m.

Accordingly, there is no evidence that Ms. Pritchett saw the defendant's face outside the lounge on the morning of the incident or that the identification procedure employed by the police was unduly suggestive.  The defendant failed to sustain his burden of proof and the trial court did not err in denying his motion to suppress the identification.  This assignment of error is without merit.[17]

For the reasons noted by the state court, this Court agrees that petitioner's claim fails on the first prong of the applicable analysis, i.e. he has not shown that the identification procedure employed was impermissibly suggestive.  "If the identification procedure is not impermissibly suggestive, *the inquiry ends*."  Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997) (emphasis added); see also United States v. Dailey, 208 Fed. App'x 344, 345 (5th Cir. 2006).

In summary, the state court identified the applicable federal standard and applied it is a reasonable manner.  Therefore, petitioner cannot show that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Accordingly, under the deferential standard mandated by the AEDPA, petitioner's claim should be denied.

---

[17] Patterson, No. 2005-KA-0164, at pp. 6-7; State Rec., Vol. XV of XVIII.

Judge's Comments

Petitioner next claims that his trial was rendered unfair by the trial judge's prejudicial comments.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> The defendant also contends that he did not receive a fair and impartial trial due to prejudicial comments directed towards defense counsel by the trial judge during the trial.  Article 772 of the Louisiana Code of Criminal Procedure provides "The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."  Unless the reviewing court is thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict, a verdict will not be set aside because of improper remarks by the judge.  State v. Gallow, 338 So.2d 920, 922 (La. 1976) (citations omitted).
>
> A review of the trial record in this case is replete with antagonistic discussions between defense counsel and the trial judge. However, these discussions were either held in the judge's chambers or in a bench conference, outside the presence of the jury.  Comments made by the trial judge and defense counsel in the presence of the jury related solely to the admission of evidence and rulings on objections by the trial judge.  Thus, while the record reveals a substantial amount of antagonism between the trial judge and defense counsel, it cannot be said that the relationship between the trial judge and defense counsel influenced the jury and contributed to the verdict.  The trial record indicates that trial judge was fair and impartial in ruling on objections and admissibility of evidence in front of the jury.  Moreover, the evidence against the defendant was substantial; three eyewitnesses testified that the defendant was involved in the armed robbery of the Tango Lounge and two eyewitnesses identified him as the person who shot Officer Russell. Accordingly, this assignment of error is without merit.[18]

---

[18] Patterson, No. 2005-KA-0164, at pp. 7-8; State Rec., Vol. XV of XVIII.

There is, of course, no question that a criminal defendant has the right to be tried before an impartial judge.  As the United States Fifth Circuit Court of Appeals has noted:

> Defendants in the American judicial system have the right to a fair trial, and part of this right is fulfilled by a judicial officer who impartially presides over the trial.  However, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard.  A judge will, however, violate a defendant's due process rights if he is biased against the defendant or has an interest in the outcome of the case.  A likelihood or appearance of bias can disqualify a judge as well.  A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him.
>
> Bias is a difficult claim to sustain under AEDPA because the Supreme Court's case law on bias has acknowledged that what degree or kind of interest is sufficient to disqualify a judge from sitting cannot be defined with precision.  Generally, the Supreme Court has recognized two kinds of judicial bias:  actual bias and presumptive bias.
>
> Almost every bias case before the Supreme Court that has found a due process violation has done so based on presumptive bias.  There are three situations in which the Supreme Court has found presumptive bias:
>
>> (1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints.

Buntion v. Quarterman, 524 F.3d 664, 672 (5th Cir. 2008) (citations, quotation marks, and brackets omitted).  In light of the standards of review imposed by 28 U.S.C. § 2254(d)(1), it is important to note that "it is only *clearly established* by Supreme Court precedent that presumptive bias exists in

the three circumstances discussed above." <u>Richardson v. Quarterman</u>, 537 F.3d 466, 476 (5th Cir. 2008).

Petitioner's allegations against the trial judge in the instant case do not involve any of those three bases for presumptive bias.  Moreover, petitioner has presented no evidence of actual bias.  Rather, he presents nothing more than random exchanges between the judge and defense counsel which indicate that each was at times exasperated by the other.  However, such flashes of exasperation are not uncommon during the course of a multi-day trial, and they certainly are not evidence of judicial bias.

To the extent that petitioner is simply arguing that his rights were violated because, regardless of whether the judge was biased, his comments might have prejudiced the jurors, that argument fares no better.  While a criminal defendant is entitled to "fair" trial, he is not entitled to a "perfect" one. <u>Evans v. Cockrell</u>, 285 F.3d 370, 376 (5th Cir. 2002).  In light of that fact, a judge's actions or comments rise to the level of a constitutional violation only when, viewed as a whole, they "'amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor.  The judge's intervention in the proceedings must be quantitatively and qualitatively substantial to meet this test.'" <u>Id</u>. (quoting <u>United States v. Bermea</u>, 30 F.3d 1539, 1569 (5th Cir. 1994)).  Clearly, that high threshold was not crossed in this case.

In reaching that conclusion, this Court notes that it must be remembered that judges are humans, not automatons, and even the best and most temperate judges can be pushed to their limits by unnecessarily contentious or obstructionist defense counsel (or, for that matter,

prosecutors).  While testy exchanges between judges and counsel are unfortunate, they are often understandable and, on occasion, even necessary to rein in counsel and to regain control of the proceedings.  Taken in context, it is evident that the exchanges at issue here were not so egregious as to taint the proceedings, prejudice the jury, or in any way render petitioner's trial unfair or his resulting conviction unconstitutional.

In summary, petitioner has neither overcome the presumption of the judge's honesty and integrity nor shown that the jurors were aware of or in any way prejudiced by the judge's comments directed to defense counsel.  In light of that fact, petitioner cannot demonstrate that the state court's decision denying his claim was contrary to, or involved an unreasonable application of, clearly established federal law.  Accordingly, the AEDPA requires this Court to likewise reject the claim.

<u>Improper Chain of Custody</u>

Lastly, petitioner claims that the prosecution failed to establish a proper chain of custody for his blood sample.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal also rejected that claim, holding:

> The defendant contends that the trial court erred in denying his Motion for a New Trial[FN17] based on his claim that the chain of custody for a blood sample taken from the defendant, which served as the basis for DNA evidence linking him to the murder weapon, was not established by the State at trial.
>
> [FN17]  Louisiana Code of Criminal Procedure art. 851 provides:
>
>> The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the

case the motion shall be denied, no matter upon what allegations it is grounded.

The court, on motion of the defendant, shall grant a new trial whenever:

(1)     The verdict is contrary to the law and the evidence;

(2)     The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;

(3)     New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;

(4)     The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or

(5)     The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.

Admission of demonstrative evidence at trial requires either visual identification, *i.e.*, by testimony at the trial that the object exhibited is the one related to the case, or by chain of custody, *i.e.*, by establishing the custody of the object from the time it was seized to the time it was offered in evidence.  State v. Sweeney, 443 So.2d 522, 528 (La. 1983) (citation omitted).  The law does not require that the

evidence as to custody eliminate all possibilities that the object has been altered.  Id.  Rather, it sufficient to establish that it is more probable than not that the object is the one connected with the case; lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility.  State v. Sam, 412 So.2d 1082, 1086 (La. 1982) (citation omitted).

In this case, the defendant asserts that the trial court erred in denying his motion for a new trial because there "was no testimony from DNA expert Karen Lewis-Holmes, how the vial of what was purported to be the appellant's blood came from.  Neither did Teresia Lamb nor James Podboy explain how, where or when a blood sample was obtained from the appellant."

A review of the record indicates that Karen L. Holmes of the NOPD, a laboratory technician qualified and accepted as an expert in the field of Molecular and Forensic DNA analysis, testified that she analyzed a swatch taken from the neckline of a tee-shirt retrieved from the Chevy S-10 truck in which the defendant was found on the morning of the incident and compared it to the blood reference sample taken from the defendant.  Notably, defense counsel failed to object contemporaneously to the admission of this evidence or the State's failure to produce testimony as to when, where and how a blood sample was taken from the defendant.[FN18]  Moreover, although the defendant is correct that the State failed to produce testimony concerning who took the blood sample, when the blood sample taken and how it was sent to the Crime Lab for testing, there is testimony by Karen Lewis Holmes of the NOPD Crime Lab identifying the blood sample as that of the defendant.  Because a defect in the chain of custody does not preclude the admissibility of the evidence but goes to the weight of the evidence presented, we do not find that the trial judge abused his discretion in denying the defendant's motion for a new trial.  This assignment of error is without merit.

[FN18]  La. Code Crim. Proc. art. 841 provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."  The defendant circumvents his failure to object to admission of the evidence in this case by raising it as an issue in his motion for new trial and

then assigning as error on appeal the trial court's
denial of the motion for new trial.[19]

Because this claim challenges an evidentiary ruling, this Court's review of the claim

is necessarily limited.  As has been noted:

> States have traditionally been afforded substantial latitude in
> fashioning their own rules of evidence and criminal procedure.
> Therefore, questions relating to the admissibility of evidence are
> matters of State law and generally do not give rise to constitutional
> errors which are subject to redress in Federal habeas corpus
> proceedings.

Taylor v. Maggio, 581 F. Supp. 359, 365-66 (E.D. La.), appeal dismissed, 727 F.2d 341 (5th Cir.

1984); see also Derden v. McNeel, 978 F.2d 1453, 1458 (5th Cir. 1992) ("[E]rrors of state law,

including evidentiary errors, are not cognizable in habeas corpus as such.").  Rather, the United

States Fifth Circuit Court of Appeals has noted:

> We will not grant habeas relief for errors in a trial court's evidentiary
> rulings unless those errors result in a "denial of fundamental fairness"
> under the Due Process Clause.  The erroneous admission of
> prejudicial evidence will justify habeas relief only if the admission
> was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little v. Johnson, 162

F.3d 855, 862 (5th Cir. 1998) ("[O]nly when the wrongfully admitted evidence has played a crucial,

critical, and highly significant role in the trial will habeas relief be warranted.").

In this case, however, petitioner has failed to establish even that the evidence was

wrongfully admitted.  As noted by the state court, the defects in the change of custody of the

evidence did not render that evidence *inadmissible*.  The Louisiana Supreme Court has explained:

---

[19] Patterson, No. 2005-KA-0164, at pp. 9-10; State Rec., Vol. XV of XVIII.

> In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case; the lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility.

State v. Sam, 412 So.2d 1082, 1086 (La. 1982); see also Gordon v. Cain, Civ. Action No. 04-1058, 2006 WL 3469564, at *2 (E.D. La. Nov. 29, 2006).  "The law does not require that the evidence as to custody eliminate all possibilities that the object has been altered."  State v. Hansbro, 796 So.2d 185, 198 (La. App. 2nd Cir. 2001); see also State v. Dunbar, 798 So.2d 178, 181 (La. App. 4th Cir. 2001).  "Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for the jury."  State v. Addison, 871 So.2d 536, 551 (La. App. 5th Cir. 2004).

Therefore, the evidence was properly admitted even without the establishment of an airtight proper chain of custody.  It was then up to defense counsel to attempt to raise doubt in the minds of the jurors regarding that evidence.  However, ultimately, the decision of what weight, if any, to give to the evidence was up to the jury.  The fact that the jurors obviously believed the witnesses' testimony and that the evidence was what it was purported to be does not make the admission of the evidence, or petitioner's ultimate conviction, wrongful.[20]

For all of the foregoing reasons, petitioner simply is not entitled to relief based on this evidentiary claim.

---

[20] In any event, even if the admission of the evidence had been erroneous, petitioner still would not be entitled to federal *habeas* relief.  In light of his identification by multiple eyewitnesses, it can hardly be said that the admission of this evidence was a "crucial, highly significant factor" in his conviction.

## <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that the petition of **Dwight Patterson, Jr.**, for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[21]

New Orleans, Louisiana, this fourteenth day of October, 2011.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[21] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.